**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UCHI RESTAURANTS GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:24-cv-01288 |
| | § | |
| JOHNNY HOANG, LAKESIDE TOKYO, | § | |
| LLC, DESTREHAN SUSHI, INC., | § | |
| BLUEBONNET SUSHI LLC, HONG CHI | § | |
| THAI, and SHUI HIN CHAN, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiff Uchi Restaurants Group, Inc. ("Plaintiff") files this *Original Complaint and Request for Injunctive Relief* against Defendants Johnny Hoang ("Hoang"), Lakeside Tokyo, LLC ("Lakeside Tokyo"), Destrehan Sushi, Inc. ("Destrehan Sushi"), Bluebonnet Sushi LLC ("Bluebonnet Sushi"), Hong Chi Thai ("Thai"), and Shui Hin Chan ("Chan") (with Hoang and Lakeside Tokyo sometimes referred to herein each or collectively as the "Primary Defendant(s)", with Destrehan Sushi, Bluebonnet Sushi, Thai, and Chan sometimes referred to herein each or collectively as the "Secondary Defendant(s)", and with the Primary Defendants and the Secondary Defendants sometimes referred to herein each or collectively as "Defendant(s)"), and respectfully shows the Court as follows:

### I. INTRODUCTION

1.      Plaintiff owns and operates the nationally recognized and award-winning UCHI® brand restaurant ("UCHI Restaurant"). The UCHI Restaurant is a high-end restaurant that specializes in a wide range of unique and contemporary Japanese-inspired offerings, including sushi. In 2013, *Bon Appétit* magazine recognized UCHI Restaurant as one of the twenty most

1

important restaurants in America. Plaintiff's UCHI Restaurant currently has locations in ten cities across America and has plans for more.

2.      Plaintiff is also the exclusive owner and senior user of several trademarks, including the valid, fully subsisting, inherently distinctive, federally registered, and incontestable word mark UCHI® for restaurant and bar services ("*UCHI* Mark"), which exists at common law, and which is the subject of U.S. Trademark Registration No. 3,722,422.

3.      In or around late 2019, Plaintiff became aware of the junior user Primary Defendants' use of the names "Uchi Sushi & Hibachi" and "Uchi Sushi" (a/k/a "Uchi Sushi & Hibachi") as the monikers for their restaurants in Metairie and Destrehan, Louisiana, respectively, without Plaintiff's permission, thereby infringing Plaintiff's rights in the *UCHI* Mark. The matter was ultimately resolved by way of a valid and enforceable written agreement between Plaintiff and the Primary Defendants titled "Confidential Settlement Agreement" and dated effective as of March 6, 2020 ("Settlement Agreement"). (*See, generally,* Settlement Agmt.).

4.      Under the Settlement Agreement, the Primary Defendants acknowledged that the two restaurants were owned and operated by Primary Defendant Lakeside Tokyo, which was, in turn, owned by Primary Defendant Hoang. (*See* Settlement Agmt. at Recitals & Signature Block). Also under the Settlement Agreement, the Primary Defendants agreed "to completely phase-out their use of [their infringing marks] . . .", and to "forever refrain from using, or assisting any third party in using, anywhere any names or marks which incorporate the word(s) 'UCHI', 'UCHICKO', 'UCHIBA', or any variations or foreign equivalents thereof . . . ." (Settlement Agmt. at § 4). It was understood at the time that the Primary Defendants had, as required under the Settlement Agreement, ceased all uses of their infringing marks.

5.       However, in or around August 2024, Plaintiff discovered the Primary Defendants' breach of the Settlement Agreement. Specifically, and contrary to the terms of the Settlement Agreement, one or both Primary Defendants (*i.e.*, Hoang and/or Lakeside Tokyo) resumed use of the infringing marks for the restaurants in Metairie and Destrehan, Louisiana, and recently expanded their use to a third location in Baton Rouge, Louisiana. Upon information and belief, one or both of the Primary Defendants (*i.e.*, Hoang and/or Lakeside Tokyo) attempted to cover-up the breach and infringement by operating the three infringing Louisiana restaurants under the Secondary Defendant entities Destrehan Sushi and/or Bluebonnet Sushi, with assistance from Secondary Defendants Thai and/or Chan who are believed to be co-owners of those entities with Primary Defendant Hoang and/or Primary Defendant Hoang's business partners in those ventures.

6.       For the reasons set forth above and below, and upon information and belief, the Primary Defendants have breached the Settlement Agreement, the Secondary Defendants have tortuously interfered with the Settlement Agreement, and the Defendants have intentionally and/or willfully infringed Plaintiff's valuable trademark rights in a scheme to perpetrate their businesses as being, or as being affiliated with, Plaintiff's UCHI Restaurant in a manner that unfairly competes with Plaintiff, that is likely to confuse consumers (if not actually confuses them), and in violation of the law. Despite repeated efforts to resolve the matter without judicial intervention, Defendants' misconduct has persisted. Thus, Plaintiff has no choice but to bring this lawsuit against the Defendants for monetary and injunctive relief.

## II. PARTIES

7.       Plaintiff UCHI Restaurants Group, Inc. is a Delaware corporation with its principal place of business at 1306 W. Oltorf Street, Suite C, Austin, Texas 78704.

8.      Upon information and belief, Primary Defendant Johnny Hoang is an individual who resides at 2 Afton Circle, Harvey, Louisiana 70058 and/or at 4877 Alcee Fortier Blvd., New Orleans, Louisiana 70129.

9.      Upon information and belief, Primary Defendant Lakeside Tokyo, LLC is a Louisiana limited liability company with its principal place of business at 1521 N. Causeway Blvd., Suite C, Metairie, Louisiana 70001 and/or at 3913 W. Esplanade Avenue, N, Metairie, Louisiana 70002. Upon information and belief, Primary Defendant Lakeside Tokyo, LLC has the following owners and/or officers: Primary Defendant Johnny Hoang; Secondary Defendant Hong Chi Thai; and Secondary Defendant Shui Hin Chan.

10.      Upon information and belief, Secondary Defendant Destrehan Sushi, Inc. is a Louisiana corporation with its principal place of business at 3001 Ormond Blvd., Suite I, Destrehan, Louisiana 70047. Upon information and belief, Secondary Defendant Destrehan Sushi, Inc. has the following owners and/or officers: Primary Defendant Johnny Hoang; Secondary Defendant Hong Chi Thai; and Secondary Defendant Shui Hin Chan.

11.      Upon information and belief, Secondary Defendant Bluebonnet Sushi LLC is a Louisiana limited liability company with its principal place of business at 5454 Bluebonnet Blvd., Suite P, Baton Rouge, Louisiana 70809. Upon information and belief, Secondary Defendant Bluebonnet Sushi has the following owner and/or officer: Primary Defendant Johnny Hoang.

12.      Upon information and belief, Secondary Defendant Hong Chi Thai is an individual who resides at 3913 W. Esplanade Avenue, N, Metairie, Louisiana 70002.

13.      Upon information and belief, Secondary Defendant Shui Hin Chan is an individual who resides at 108 Lac Lafreniere Court, Luling, Louisiana 70070.

///

4

### III. SUBJECT MATTER JURISDICTION

14.    The Court has federal-question jurisdiction over Plaintiff's federal trademark claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121(a) because this action arises under the Lanham Act, 15 U.S.C. §§ 1501 *et seq.* Additionally, the Court has supplemental jurisdiction over Plaintiff's breach of contract and tortious interference with an existing contract claims because it is so related to Plaintiff's other claims in this action that it forms part of the same cause or controversy under Article III of the United States Constitution. *See* 28 U.S.C. § 1367(a).

### IV. PERSONAL JURISDICTION

15.    Both of the Primary Defendants are subject to personal jurisdiction in Texas because they are signatories to the Settlement Agreement; the Settlement Agreement is a valid and enforceable contract that contains a valid, enforceable, and mandatory forum selection clause designating "the federal courts in the Western District of Texas, Austin Division" as the forum for the resolution of any disputes arising under the Settlement Agreement; and a valid forum selection clause establishes sufficient contacts with Texas for purposes of personal jurisdiction. (Settlement Agmt. at § 15). *See CDX Holdings, Inc. v. Hobbs,* No. 3:12-CV-1055-P, 2012 WL 12885213, at *4 (N.D. Tex. Aug. 16, 2012) ("The Fifth Circuit has established that a valid choice of forum provision is sufficient to grant the forum state personal jurisdiction over a defendant, even if minimum contacts are otherwise lacking"); *Qu-Soft LLC v. Dominion Siding, LLC,* No. 1:20-CV-640-LY, 2020 WL 8678735, at *4 (W.D. Tex. Oct. 22, 2020) ("Personal jurisdiction can be waived by an enforceable forum selection clause in which the parties consent to personal jurisdiction in a specified forum"), *report and recommendation adopted sub nom. by Qu-Soft LLC v. Dominion Siding, Inc.,* No. A-20-CV-0640-LY, 2020 WL 8678022 (W.D. Tex. Dec. 22, 2020).

16.    All the Secondary Defendants, as nonresidents, are subject to personal jurisdiction in Texas pursuant to Texas' long-arm statute, *see* TEX. CIV. PRAC. & REM. CODE § 17.042(2) (acts

constituting business in Texas), because they have committed torts in whole or in part in Texas, namely, their intentional and tortious interference with the Settlement Agreement, which forms the basis for Plaintiff's tortious interference with existing contract claim against them. Upon information and belief, the Secondary Defendants knew of the Settlement Agreement and its restrictions concerning use of the word "UCHI" as part of their restaurants' names. Upon information and belief, Secondary Defendants Destrehan Sushi and Bluebonnet Sushi are entities owned and operated by Primary Defendant Hoang and, thus, imputed with his knowledge. Upon information and belief, Secondary Defendants Thai and Chan are business partners with Primary Defendants Hoang and/or Lakeside Tokyo in their restaurant ventures at issue here; and, through that close business relationship, knew about the previous trademark dispute and its outcome. Despite such knowledge of the Settlement Agreement and its restrictions, the Secondary Defendants tortuously interfered with the Settlement Agreement by engaging with one or more of the Primary Defendants to unlawfully breach that contract by using the word "UCHI" as part of the name of the Louisiana restaurants at issue here. *See Eagle Metal Prod., LLC v. Keymark Enterprises, LLC,* 651 F. Supp. 2d 577, 594-96 (N.D. Tex. 2009) (holding the *Calder* effects test supported specific personal jurisdiction over the claimed tortious interference with an existing contract). Upon information and belief, the Secondary Defendants' intentional and tortious actions were expressly aimed at Texas and they knew that the brunt of the injury would be felt by Plaintiff in Texas because the Secondary Defendants knew about the prior trademark dispute and its resulting Settlement Agreement; because the Secondary Defendants knew from the foregoing that the Settlement Agreement established Texas as the forum and choice of law for disputes arising thereunder; because the Secondary Defendants knew from the foregoing that Plaintiff's principal place of business was in Texas; because the Secondary Defendants aided the Primary Defendants

with their breach of the Settlement Agreement to the injury of Plaintiff and its interests in Texas, including Plaintiff's trademark rights and associated goodwill given the close enough geographic proximity between the parties' respective restaurants for word-of-mouth to spread and the likelihood of confusion by consumers that Defendants' restaurants are an expansion of Plaintiff's UCHI Restaurants. Accordingly, the exercise of personal jurisdiction over the Secondary Defendants does not offend traditional notions of fair play and substantial justice, as the Secondary Defendants' contacts with the state of Texas are such that they should reasonably anticipate being haled into court here.

### V. SERVICE OF PROCESS

17.     Primary Defendant Johnny Hoang may be served with process as provided under FED. R. CIV. P. 4(c), 4(e)(1), and 4(e)(2), as effected pursuant to TEX. R. CIV. P. 106(a) and 108 as the state laws for serving a summons upon nonresidents in an action brought in the courts of general jurisdiction in the state where the district court is located, by delivering to him a true copy of the summons with a copy of this Complaint attached thereto by: (1) personal delivery; and/or (2) delivery via registered or certified mail, return receipt requested, to Primary Defendant Hoang's last known address of 2 Afton Cir, Harvey, Louisiana 70058 and/or at 4877 Alcee Fortier Blvd., New Orleans, Louisiana 70129.

18.     Primary Defendant Lakeside Tokyo, LLC may be served with process as provided under FED. R. CIV. P. 4(c), 4(e)(1), 4(h)(1)(A), and 4(h)(1)(B), as effected pursuant to TEX. R. CIV. P. 106(a) and 108 as the state laws for serving a summons upon nonresidents in an action brought in the courts of general jurisdiction in the state where the district court is located, by delivering to it a true copy of the summons with a copy of this Complaint attached thereto by: (1) personal delivery via delivery to one of Primary Defendant Lakeside Tokyo's officers, managing agents, or general agents, including, as per the information currently on file with the Louisiana Secretary of

State, Primary Defendant Hoang, Secondary Defendant Thai, and/or Secondary Defendant Chan; and/or (2) delivery via registered or certified mail, return receipt requested, to the last known address of Primary Defendant Lakeside Tokyo's registered agent and office for service of process, with such registered agent and address being Johnny Hoang, 4877 Alcee Fortier Blvd., New Orleans, Louisiana 70129, as per the information currently on file with the Louisiana Secretary of State; and/or (3) delivery via registered or certified mail, return receipt requested, to the last known address of Primary Defendant Lakeside Tokyo's other registered agent and office for service of process, with such other registered agent and address being Hong Chi Thai, 3913 W. Esplanade Avenue, N, Metairie, Louisiana 70002, as per the information currently on file with the Louisiana Secretary of State; and/or (4) delivery via registered or certified mail, return receipt requested, to the last known address of Primary Defendant Lakeside Tokyo's other registered agent and office for service of process, with such other registered agent and address Shui Hin Chan, 13111 Sevres Street, New Orleans, Louisiana 70129, as per the information currently on file with the Louisiana Secretary of State.

19.     Secondary Defendant Destrehan Sushi, Inc. may be served with process as provided under FED. R. CIV. P. 4(c), 4(e)(1), 4(h)(1)(A), and 4(h)(1)(B), as effected pursuant to TEX. R. CIV. P. 106(a) and 108 as the state laws for serving a summons upon nonresidents in an action brought in the courts of general jurisdiction in the state where the district court is located, by delivering to him a true copy of the summons with a copy of this Complaint attached thereto by: (1) personal delivery via delivery to one of Secondary Defendant Destrehan Sushi's officers, managing agents, or general agents, including, as per the information currently on file with the Louisiana Secretary of State, Primary Defendant Hoang, Secondary Defendant Thai, and/or Secondary Defendant Chan; and/or (2) delivery via registered or certified mail, return receipt requested, to the last known

address of Secondary Defendant Destrehan Sushi's registered agent and office for service of process, with such registered agent and address being Johnny Hoang, 4877 Alcee Fortier Blvd., New Orleans, Louisiana 70129, as per the information currently on file with the Louisiana Secretary of State; and/or (3) delivery via registered or certified mail, return receipt requested, to the last known address of Secondary Defendant Destrehan Sushi's other registered agent and office for service of process, with such other registered agent and address being Hong Chi Thai, 3913 W. Esplanade Avenue, N, Metairie, Louisiana 70002, as per the information currently on file with the Louisiana Secretary of State; and/or (4) delivery via registered or certified mail, return receipt requested, to the last known address of Secondary Defendant Destrehan Sushi's other registered agent and office for service of process, with such other registered agent and address Shui Hin Chan, 13111 Sevres Street, New Orleans, Louisiana 70129, as per the information currently on file with the Louisiana Secretary of State.

20.     Secondary Defendant Bluebonnet Sushi LLC may be served with process as provided under FED. R. CIV. P. 4(c), 4(e)(1), 4(h)(1)(A), and 4(h)(1)(B), as effected pursuant to TEX. R. CIV. P. 106(a) and 108 as the state laws for serving a summons upon nonresidents in an action brought in the courts of general jurisdiction in the state where the district court is located, by delivering to it a true copy of the summons with a copy of this Complaint attached thereto by: (1) personal delivery via delivery to one of Secondary Defendant Bluebonnet Sushi's officers, managing agents, or general agents, including, as per the information currently on file with the Louisiana Secretary of State, Primary Defendant Hoang; and/or (2) delivery via registered or certified mail, return receipt requested, to the last known address of Secondary Defendant Bluebonnet Sushi's registered agent and office for service of process, with such registered agent

and address being Johnny Hoang, 4877 Alcee Fortier Blvd., New Orleans, Louisiana 70129, as per the information currently on file with the Louisiana Secretary of State.

21.     Secondary Defendant Hong Chi Thai may be served with process as provided under FED. R. CIV. P. 4(c), 4(e)(1), and 4(e)(2), as effected pursuant to TEX. R. CIV. P. 106(a) and 108 as the state laws for serving a summons upon nonresidents in an action brought in the courts of general jurisdiction in the state where the district court is located, by delivering to him a true copy of the summons with a copy of this Complaint attached thereto by: (1) personal delivery; and/or (2) delivery via registered or certified mail, return receipt requested, to Secondary Defendant Thai's last known address of 3913 W. Esplanade Ave., N, Metairie, Louisiana 70002.

22.     Secondary Defendant Shui Hin Chan may be served with process as provided under FED. R. CIV. P. 4(c), 4(e)(1), and 4(e)(2), as effected pursuant to TEX. R. CIV. P. 106(a) and 108 as the state laws for serving a summons upon nonresidents in an action brought in the courts of general jurisdiction in the state where the district court is located, by delivering to him a true copy of the summons with a copy of this Complaint attached thereto by: (1) personal delivery; and/or (2) delivery via registered or certified mail, return receipt requested, to Secondary Defendant Chan's last known address of 108 Lac Lafreniere Court, Luling, Louisiana 70070.

## VI. VENUE

23.     Venue is proper in this judicial district because, as alleged in further detail herein, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, or a substantial part of the property that is the subject of this action is situated, in this judicial district. *See* 28 U.S.C. § 1391(b)(2). Venue is also proper in this judicial district because Defendants are subject to personal jurisdiction in Texas with respect to Plaintiff's claims. *See id.* at § 1391(b)(3).

///

///

**VII.  STATEMENT OF FACTS**

**A.      General Background**

24.      Plaintiff incorporates and re-alleges all prior paragraphs herein by reference as if fully set forth herein.

**B.      Plaintiff's *UCHI* Mark**

25.      Again, Plaintiff is the exclusive owner and senior user of the valid, fully subsisting, inherently distinctive, federally registered, and incontestable word mark UCHI® for restaurant and bar services (*i.e.*, the *UCHI* Mark), together with the goodwill of the business in which the *UCHI* Mark is used, and that part of the goodwill of the business connected with the use of and symbolized by the *UCHI* Mark. Plaintiff's exclusive and senior trademark rights in and to the *UCHI* Mark exist at common law and are the subject of U.S. Trademark Registration No. 3,722,422 ("'422 Registration"), which was registered on the Principal Register on December 8, 2009, for "Restaurant and bar services" in International Class 43.

26.      Plaintiff has expended substantial time, money, and resources to market the services offered under the *UCHI* Mark; and to develop, maintain, and protect the *UCHI* Mark and its associated goodwill. As a result of its widespread, continuous, and exclusive use over the years of the inherently distinctive *UCHI* Mark to identify both its corresponding services and Plaintiff as their source, Plaintiff's valid and fully subsisting federal statutory and common law rights and associated goodwill in and to the *UCHI* Mark are valuable.

**C.      The Settlement Agreement with the Primary Defendants**

27.      Again, Plaintiff and the Primary Defendants are parties to a valid and enforceable written agreement titled "Confidential Settlement Agreement" and dated effective as of March 6, 2020 (*i.e.*, the Settlement Agreement). Under the Settlement Agreement, the Primary Defendants

acknowledged and agreed to, among other things, the following terms which Plaintiff is permitted to disclose here, (*see* Settlement Agmt. at § 11):

a.  Primary Defendant Lakeside Tokyo acknowledged that it is the owner and operator of "a restaurant in Metairie, Louisiana named 'Uchi Sushi & Hibachi' and a restaurant in Destrehan, Louisiana named 'Uchi Sushi' (a/k/a 'Uchi Sushi & Hibachi')", (*see* Settlement Agmt. at § Recitals);

b.  The Primary Defendants both acknowledged and agreed (i) that Plaintiff is the exclusive owner of the *UCHI* Mark, and (ii) that the *UCHI* Mark is valid, enforceable, fully subsisting, inherently distinctive, strong, and famous, (*see id.* at § 2);

c.  The Primary Defendants both agreed to forever refrain from objecting to, contesting, or otherwise challenging, or assisting any third party, directly or indirectly, with objecting to, contesting, or otherwise challenging, (i) Plaintiff's exclusive ownership in the *UCHI* Mark, (ii) the validity, enforceability, distinctiveness, strength, or fame of the *UCHI* Mark, and (iii) any use, registration, or application for registration of the *UCHI* Mark by Plaintiff, (*see id.* at § 3);

d.  The Primary Defendants both agreed that, by April 5, 2020 (*i.e.*, thirty days after the Settlement Agreement's March 6, 2020 effective date), they would "completely phase-out" their use of the infringing names of their restaurants that incorporate any element of Plaintiff's trademarks, including the *UCHI* Mark, (*see id.* at § 4: conspicuously stating that "TIME IS OF THE ESSENCE" with respect to the foregoing contractual obligation);

e.  The Primary Defendants both agreed that, after April 5, 2020 (*i.e.*, thirty days after the Settlement Agreement's March 6, 2020 effective date), they "shall forever

refrain from using, or assisting any third party in using, anywhere any names or marks which incorporate the word(s) 'UCHI' . . . or any variations or foreign equivalents thereof to identify and distinguish [the Primary] Defendants' or any third party's respective goods, services, businesses, or vocations from others and/or to indicate the source of such goods, services, businesses, or vocations", (*see id.* at § 4);

      f.    Plaintiff and the Primary Defendants both agreed that, as a limited exception to the Primary Defendants' contractual obligations under section 4 of the Settlement Agreement, and subject to certain quality control standards and requirements, the Primary Defendants could use the [transitional] name "Johnny's Uchi Sushi & Hibachi" until September 6, 2020 (*i.e.*, six months after the Settlement Agreement's March 6, 2020 effective date) to identify and market the restaurants in Metairie and Destrehan, Louisiana while the Primary Defendants transitioned to a new, non-infringing name for those restaurants, and that the Primary Defendants thereafter "shall forever refrain from using [that transitional name]", (*see id.* at § 5: conspicuously stating that "TIME IS OF THE ESSENCE" with respect to the foregoing contractual obligation);

      g.    The Primary Defendants both agreed that any release of claims afforded to them or any other releasees under the Settlement Agreement was limited to any disputes, controversies, or claims which Plaintiff "had or may have had <u>*on or before*</u> the Effective Date" (*i.e.*, on or before March 6, 2020), and expressly excluded "any dispute, controversy, or claim arising from or in connection with the governance, interpretation, breach, or enforcement of this [Settlement] Agreement, or concerning any unauthorized use by [the Primary] Defendants of . . . [the *UCHI* Mark] or any variations thereof <u>*after*</u> the Effective Date" (*i.e.*, after March 6, 2020), (*see id.* at § 6 (emphasis added));

h.      The Primary Defendants both agreed that the "[Settlement] Agreement, and all disputes, controversies, and claims arising from or in connection with [the Settlement] Agreement or its subject matter [(including the infringement of the *UCHI* Mark)], shall be governed, interpreted, construed, and enforced in accordance with the laws of the State of Texas and applicable federal law of the United States of America . . .", (*see id.* at § 14);

i.      The Primary Defendants both agreed to "irrevocably submit to the exclusive personal jurisdiction and venue of the state courts in Travis County, Texas, and the federal courts in the Western District of Texas, Austin Division, for the litigation of any disputes, controversies, or claims arising from or concerning [the Settlement] Agreement . . . ", (*see id.* at § 15);

j.      The Primary Defendants both agreed that "in the event of any breach of [the Settlement] Agreement or any unauthorized use of the [*UCHI* Mark], the ['Uchi Sushi & Hibachi' or 'Uchi Sushi' restaurant names], . . . , and/or any other names or marks which incorporate the word[] 'UCHI' . . . or any variations or foreign equivalents thereof," Plaintiff is entitled to any and all forms of injunctive relief, "without the necessity of a bond, to prevent and/or to undue any such unauthorized use", and that Plaintiff's "right to obtain such equitable relief shall not limit [Plaintiff's] right to obtain any other remedies which may be available to [Plaintiff] under [the Settlement] Agreement, at law, and/or in equity", (*see id.* at § 16);

k.      The Primary Defendants both acknowledged and agreed that "in the event of a breach of [the Settlement] Agreement, [Plaintiff] is entitled to recover all legal expenses incurred by [Plaintiff] (including, without limitation, all reasonable costs and expenses, and all reasonable outside attorneys' fees) should [Plaintiff] prevail in any

lawsuit or other proceeding involving any [Primary] Defendants' breach of [the Settlement] Agreement", (*see id.* at § 17); and

l.      The Primary Defendants both agreed to "irrevocably and unconditionally" waive their right to a trial by jury "in any lawsuit or other proceeding or arising from or in connection with [the Settlement] Agreement", (*see id.* at § 18 (omitting conspicuous formatting of bold, small-caps font)).

28.     After the Settlement Agreement was entered into, it was Plaintiff's understanding that the Primary Defendants had completed their phase-out of the infringing 'Uchi Sushi & Hibachi' and 'Uchi Sushi' restaurant names, thereby allowing the parties to move on from their dispute and operate going forward under the terms of the Settlement Agreement. However, in or about August 2024, Plaintiff discovered the Primary Defendants—each and/or together with the Secondary Defendants—had resumed the use of the word "UCHI" in the names of their restaurants in Metairie and Destrehan, Louisiana, and had also opened a third restaurant using the word "UCHI" in its name. Such was done in breach of the Settlement Agreement and in violation of Plaintiff's rights in the *UCHI* Mark.

**D.      Defendants' Unauthorized Conduct**

29.     More specifically, Plaintiff has discovered at least three active and unauthorized uses of the *UCHI* Mark by Defendants as part of the name of the following restaurants (collectively, "Infringing Restaurants"): (1) "Uchi Sushi & Hibachi", located at or about 1521 N. Causeway Blvd., Metairie, LA 70001 ("Metairie Restaurant"); (2) "Uchi Sushi Hibachi & Vietnamese Noodles" located at or about 3001 Ormond Blvd., Destrehan, Louisiana 70047 ("Destrehan Restaurant"); and (3) "Uchi Sushi" (or, as displayed on the restaurant's menus, "Uchi Sushi & Hibachi") located at or about 5454 Bluebonnet Blvd. Suite P, Baton Rouge, Louisiana 70809 ("Baton Rouge Restaurant").

30.     Upon information and belief, Plaintiff's first use, federal trademark application filing date, and federal trademark registration date of the *UCHI* Mark all pre-date Defendants' use of the word "UCHI" in the names of the Infringing Restaurants.

31.     Defendants have no affiliation with Plaintiff, Plaintiff's UCHI Restaurant, or the *UCHI* Mark.

32.     Plaintiff has not authorized any Defendants to use the *UCHI* Mark in connection with the Infringing Restaurants.

33.     Upon information and belief, at all relevant times, Defendants knew, or had reason to know, that they were not authorized to use the *UCHI* Mark in connection with the Infringing Restaurants. Nonetheless, upon information and belief, Defendants proceeded to intentionally and willfully breach the Settlement Agreement, cause the Primary Defendants to breach the Settlement Agreement, and/or infringe Plaintiff's intellectual property rights in and to the *UCHI* Mark by making the word "UCHI" a part of (if not the dominant portion of) the names of the Infringing Restaurants, and by then marketing those infringing names to consumers (including, for example, by using the infringing names in the signage, menus, and promotion of the Infringing Restaurants).

34.     Defendants' unauthorized uses are further illustrated by the following images of the Infringing Restaurants' exteriors, interiors, and materials taken on or about October 8, 2024:

///

///

///

///

///

///



**Figure 1:** Images of the infringing Metairie Restaurant



**Figure 2:** Images from the infringing Destrehan Restaurant



**Figure 3:** Images from the infringing Baton Rouge Restaurant



**Figure 4:** Additional images from the infringing Baton Rouge Restaurant

35.     As foregoing images illustrate, Defendants make actionable trademark uses of Plaintiff's *UCHI* Mark without Plaintiff's authorization, and they do so in breach of the Settlement Agreement and in violation of Plaintiff's trademark rights and applicable law. These uses, and all other unauthorized uses of Plaintiff's *UCHI* Mark made by or at the direction of Defendants, are likely to cause confusion among consumers and capitalize on Plaintiff's goodwill. Indeed, Defendants' business model for the Infringing Restaurants involves little more than capitalizing on Plaintiff's reputation and goodwill and creating confusion among consumers between the parties' respective restaurants, while marketing and selling a lower quality restaurant experience to the injury of Plaintiff's high-end restaurant experience.

36.     Upon discovering the unauthorized uses of Plaintiff's *UCHI* Mark described herein, Plaintiff issued cease-and-desist letters to the Primary Defendants in accordance with the Settlement Agreement, and subsequently communicated with Primary Defendant Hoang about resolving the matter without judicial intervention. Despite Plaintiff's efforts, Defendants' unauthorized conduct persists.

37.     Upon information and belief, Defendants have engaged in other activities that violate Plaintiff's trademark rights; thus, Plaintiff reserves its right to amend this pleading, as appropriate, if and when it discovers those activities during the course of litigation.

## VIII.  CAUSES OF ACTION

### A.   <u>Count 1: Federally Trademark Infringement (Direct and Contributory Liability), Lanham Act § 32(1)(a) – All Defendants</u>

38.     Plaintiff incorporates and re-alleges all prior paragraphs herein by reference as if fully set forth herein.

39.     The *UCHI* Mark is a valid, fully subsisting, inherently distinctive, federally registered, and incontestable trademark, and the subject of a federal registration on the Principal Register, namely, the '422 Registration. The *UCHI* Mark is also a strong mark.

40.     The names of the Infringing Restaurants, including the names "Uchi Sushi", "Uchi Sushi & Hibachi", and "Uchi Sushi Hibachi & Vietnamese Noodles" (collectively, the "Infringing Marks"), are confusingly similar to the *UCHI* Mark in appearance, sound, meaning, and/or commercial impression.

41.     The services offered in connection with the Infringing Marks (including restaurant services and potential bar services) are identical, highly related, and/or in the natural scope of expansion of Plaintiff's services offered in connection with Plaintiff's *UCHI* Mark.

42.     Plaintiff has not consented to or otherwise authorized Defendants' use of the *UCHI* Mark or any variations thereof, including with the Infringing Marks. Nonetheless, Defendants have made, and continue to make, actionable trademark uses of the Infringing Marks in commerce; and they have done so knowing about Plaintiff's *UCHI* Mark and intended to capitalize on Plaintiff's popularity or otherwise trade one Plaintiff's good and valuable reputation.

43.     The Infringing Marks are likely to cause confusion, mistake or deception, in the minds of consumers as to the source or origin of Defendants' services. Consumers familiar with Plaintiff's *UCHI* Mark are likely to mistakenly believe that Defendants' services are sponsored by, authorized by, endorsed, affiliated with, and/or otherwise approved by Plaintiff. Thus, the Infringing Marks are likely to cause confusion, or to cause mistake, or to deceive. Such acts constitute federal trademark infringement in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), and Plaintiff has been and will continue to be injured as a result.

44.     Additionally, and/or alternatively, to the extent Secondary Defendants Thai and/or Chan are not *direct* infringers under Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), they are *contributory* infringers thereunder and, thus, liable to the same degree as if they were direct infringers. More specifically, upon information and belief, Secondary Defendants Thai and/or Chan have, and continue to, contributorily infringe the *UCHI* Mark by intentionally inducing one or more of the other Defendants to infringe that mark in the manners alleged herein; and they did so by directing, controlling, ratifying, and/or directly participating in the such infringing activities by way of their direct involvement with the other Defendants as alleged herein; and they have done so with knowledge of Plaintiff's *UCHI* Mark and with the intent to capitalize on Plaintiff's popularity or otherwise trade on Plaintiff's good and valuable reputation.

45.     For these reasons, Plaintiff is entitled to recover and seeks an award of Defendants' profits and any actual damage sustained by Plaintiff, as well as an enhancement of the amounts found as actual damages not exceeding three times such amounts, for Defendants' infringement of the federally registered *UCHI* Mark in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a). *See* 15 U.S.C. § 1117(a). Alternatively, Plaintiff seeks an award of nominal damages.

46.     Plaintiff also seeks the delivery and destruction of all articles, including any of the signage, menus, marketing materials, et cetera, that make use of the *UCHI* Mark in a manner that infringes Plaintiff's federally registered *UCHI* Mark. *See* 15 U.S.C. § 1118.

47.     Moreover, Plaintiff also seeks a preliminary injunction and/or a permanent injunction restraining Defendants from further infringing the *UCHI* Mark and any variations thereof because: (a) Plaintiff has suffered and/or will suffer an irreparable injury; (b) other remedies available at law, such as monetary damages, are inadequate to fully compensate Plaintiff for its injuries; (c) a remedy in equity is warranted; and (d) the public interest will not be disserved

by an injunction, preliminary, permanent, or otherwise. *See* 15 U.S.C. § 1116(a). Defendants will continue to commit such acts unless restrained and enjoined.

48. Defendants' alleged misconduct is willful, intentional, and/or conducted in bad faith, thereby rendering this case "exceptional" within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Thus, Plaintiff also seeks an award of its reasonable attorney fees for this action and any appeals thereof pursuant to applicable law.

49. Plaintiff also seeks an award of its costs for this action and any appeals thereof pursuant to applicable law. *See* 15 U.S.C. § 1117(a); *see* Fed. R. Civ. P. 54(d)(1).

50. Finally, Plaintiff seeks pre- and post-judgment interest on the principal amounts it recovers for this action and any appeals thereof pursuant to applicable law.

**B.** **Count 2: False Association (Direct and Contributory Liability), Lanham Act § 43(a)(1)(A) – All Defendants**

51. Plaintiff incorporates and re-alleges all prior paragraphs herein by reference as if fully set forth herein.

52. In addition to and/or in the alternative to Count 1 above, Plaintiff alleges this Count 2 against Defendants for violations of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) ("Section 43(a) of the Lanham Act"), by false association. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014) ("Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B).").

53. The *UCHI* Mark is a valid, fully subsisting, and inherently distinctive trademark. The *UCHI* Mark is also a strong mark.

54. The Infringing Marks are confusingly similar to the *UCHI* Mark in appearance, sound, meaning, and/or commercial impression.

55.     The services offered in connection with the Infringing Marks (including restaurant services and potential bar services) are identical, highly related, and/or in the natural scope of expansion of Plaintiff's services offered in connection with Plaintiff's *UCHI* Mark.

56.     Plaintiff has not consented to or otherwise authorized Defendants' use of the *UCHI* Mark or any variations thereof, including with the Infringing Marks. Nonetheless, Defendants have made, and continue to make, actionable trademark uses of the Infringing Marks in commerce; and they have done so knowing about Plaintiff's *UCHI* Mark and intended to capitalize on Plaintiff's popularity or otherwise trade on Plaintiff's good and valuable reputation.

57.     The Infringing Marks are likely to cause confusion, mistake or deception, in the minds of consumers as to the source or origin of Defendants' services. Consumers familiar with Plaintiff's *UCHI* Mark are likely to mistakenly believe that Defendants' services are sponsored by, authorized by, endorsed, affiliated with, and/or otherwise approved by Plaintiff. Thus, the Infringing Marks are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' services or commercial activities by Plaintiff. Such acts constitute false association in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and Plaintiff has been and will continue to be injured as a result.

58.     Additionally, and/or alternatively, to the extent Secondary Defendants Thai and/or Chan are not *direct* infringers under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), they are *contributory* infringers thereunder and, thus, liable to the same degree as if they were direct infringers. More specifically, upon information and belief, Secondary Defendants Thai and/or Chan have, and continue to, contributorily infringe the *UCHI* Mark by intentionally inducing one or more of the other Defendants to infringe that mark in the manners

alleged herein; and they did so by directing, controlling, ratifying, and/or directly participating in the such infringing activities by way of their direct involvement with the other Defendants as alleged herein; and they have done so with knowledge of Plaintiff's *UCHI* Mark and with the intent to capitalize on Plaintiff's popularity or otherwise trade on Plaintiff's good and valuable reputation.

59.     For these reasons, Plaintiff is entitled to recover and seeks an award of Defendants' profits and any actual damage sustained by Plaintiff, as well as an enhancement of the amounts found as actual damages not exceeding three times such amounts, for Defendants' acts of false association with the *UCHI* Mark. *See* 15 U.S.C. § 1117(a). Alternatively, Plaintiff seeks an award of nominal damages.

60.     Plaintiff also seeks the delivery and destruction of all articles, including any of the signage, menus, marketing materials, et cetera, that make use of the *UCHI* Mark in a manner that violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). *See* 15 U.S.C. § 1118.

61.     Moreover, Plaintiff also seeks a preliminary injunction and/or a permanent injunction restraining Defendants from further infringing the *UCHI* Mark and any variations thereof because: (a) Plaintiff has suffered and/or will suffer an irreparable injury; (b) other remedies available at law, such as monetary damages, are inadequate to fully compensate Plaintiff for its injuries; (c) a remedy in equity is warranted; and (d) the public interest will not be disserved by an injunction, preliminary, permanent, or otherwise. *See* 15 U.S.C. § 1116(a). Defendants will continue to commit such acts unless restrained and enjoined.

62.     Defendants' alleged misconduct is intentional, willful, malicious, and/or conducted in bad faith, thereby rendering this case "exceptional" within the meaning of Section 35(a) of the

Lanham Act, 15 U.S.C. § 1117(a). Thus, Plaintiff also seeks an award of its reasonable attorney fees for this action and any appeals thereof pursuant to applicable law.

63.     Plaintiff also seeks an award of its costs for this action and any appeals thereof pursuant to applicable law. *See* 15 U.S.C. § 1117(a); *see* Fed. R. Civ. P. 54(d)(1).

64.     Finally, Plaintiff seeks pre- and post-judgment interest on the principal amounts it recovers for this action and any appeals thereof pursuant to applicable law.

C.     **Count 3: Breach of Contract – Primary Defendants**

65.     Plaintiff incorporates and re-alleges all prior paragraphs herein by reference as if fully set forth herein.

66.     The Settlement Agreement is a valid, enforceable contract between Plaintiff and the Primary Defendants.

67.     At all relevant times, Plaintiff performed, tendered performance of, or was excused from performing its contractual obligations under the Settlement Agreement.

68.     In contrast, the Primary Defendants breached (or materially breached) the Settlement Agreement by failing to perform their contractual obligations to (a) "completely phase-out" their use of the infringing names of their restaurants that incorporate any element of Plaintiff's trademarks, including the *UCHI* Mark, and (b) "forever refrain from using, or assisting any third party in using, anywhere any names or marks which incorporate the word(s) 'UCHI' . . . or any variations or foreign equivalents thereof to identify and distinguish [the Primary] Defendants' or any third party's respective goods, services, businesses, or vocations from others and/or to indicate the source of such goods, services, businesses, or vocations", (*see* Settlement Agmt. at § 4).

69.     The Primary Defendants' breaches of the Settlement Agreement has resulted in the Primary Defendants' unfairly and illegally benefitting from Plaintiff's *UCHI* Mark and its

associated goodwill. This has caused substantial and irreparable injury to Plaintiff, the *UCHI* Mark, and the substantial goodwill represented thereby.

70.     For these reasons, Plaintiff is entitled to recover and seeks an award of actual damages for breach of contract in an amount to be determined at trial. Alternatively, Plaintiff seeks an award of nominal damages.

71.     Plaintiff also seeks an order of specific performance, a preliminary injunction, and/or a permanent injunction restraining the Primary Defendants from further breaching the Settlement Agreement and from further infringing the *UCHI* Mark and any variations thereof because: (a) Plaintiff has suffered and/or will suffer an irreparable injury; (b) other remedies available at law, such as monetary damages, are inadequate to fully compensate Plaintiff for its injuries; (c) a remedy in equity is warranted; and (d) the public interest will not be disserved by an injunction, preliminary, permanent, or otherwise. (*See* Settlement Agmt. at § 16). The Primary Defendants will continue to commit such acts unless restrained and enjoined.

72.     Additionally, Plaintiff seeks an award of its reasonable attorneys' fees incurred for this action and any appeals thereof pursuant to the terms of the Settlement Agreement. (*See* Settlement Agmt. at § 17.) Additionally, and/or alternatively, Plaintiff seeks an award of its reasonable attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8) because this is a claim for the breach of a written contract.

73.     Moreover, Plaintiff seeks an award of its reasonable costs and expenses incurred for this action and any appeals thereof pursuant to the terms of the Settlement Agreement. (*See* Settlement Agmt. at § 17.) Additionally, and/or alternatively, Plaintiff seeks an award of its costs for this action and any appeals thereof according to applicable law. *See* FED. R. CIV. P. 54.

74.     Finally, Plaintiff seeks pre- and post-judgment interest on the principal amounts it recovers for this action and any appeals thereof pursuant to applicable law.

**D.      Count 4: Tortious Interference with an Existing Contract – Secondary Defendants**

75.     Plaintiff incorporates and re-alleges all prior paragraphs herein by reference as if fully set forth herein.

76.     Again, the Settlement Agreement is a valid, enforceable contract between Plaintiff and the Primary Defendants.

77.     Upon information and belief, the Secondary Defendants knew of the Settlement Agreement and its restrictions concerning use of the word "UCHI" as part of the Infringing Restaurants' names. With respect to their knowledge of the foregoing, the Secondary Defendants either (a) had actual knowledge (or actual knowledge imputed upon them) of the Settlement Agreement and Plaintiff's interest in the Settlement Agreement, or (b) knowledge of fact and circumstances that would lead a reasonable person to believe there was a contract like the Settlement Agreement in which Plaintiff had an interest.

78.     In a willful and intentional effort to interfere with the Primary Defendants' Settlement Agreement, the Secondary Defendants assisted one or more of the Primary Defendants in breaching the Settlement Agreement by using the word "UCHI" as part of the Infringing Restaurants' names, thereby creating or assisting with the creation of, the Infringing Marks. Such tortious interference with the Settlement Agreement proximately caused injury to Plaintiff, including, without limitation, causing the Primary Defendants to breach their contractual obligation to refrain from using the word "UCHI" in the names of the Infringing Restaurants, and causing injury to Plaintiff's valid and enforceable trademark rights and associated goodwill for the *UCHI* Mark. Plaintiff has incurred actual damages or losses as a result.

79.     For these reasons, Plaintiff is entitled to recover and seeks an award of actual damages sustained by Plaintiff for the Secondary Defendants' tortious interference with the Settlement Agreement in an amount to be determined at trial. Alternatively, Plaintiff seeks an award of nominal damages.

80.     Plaintiff also seeks an award of exemplary damages because the Secondary Defendants' conduct herein was fraudulent, malicious, and/or grossly negligent. *See* TEX. CIV. PRAC. & REM. CODE § 41.003.

81.     The Secondary Defendants' conduct, unless and until enjoined and restrained by this Court, has caused and will continue to cause irreparable injury to Plaintiff as described above. Plaintiff has no adequate remedy at law for this injury.

82.     Plaintiff also seeks a preliminary injunction and/or a permanent injunction restraining the Secondary Defendants from further interfering with the Settlement Agreement, including making further unauthorized uses of the *UCHI* Mark and any variations thereof, because: (a) Plaintiff has suffered and/or will suffer an irreparable injury; (b) other remedies available at law, such as monetary damages, are inadequate to fully compensate Plaintiff for its injuries; (c) a remedy in equity is warranted; and (d) the public interest will not be disserved by an injunction, preliminary, permanent, or otherwise. The Secondary Defendants will continue to commit such acts unless restrained and enjoined.

83.     Moreover, Plaintiff seeks an award of its costs for this action and any appeals thereof according to applicable law. *See* FED. R. CIV. P. 54.

84.     Finally, Plaintiff seeks pre- and post-judgment interest on the principal amounts it recovers for this action and any appeals thereof pursuant to applicable law.

///

## IX. CONDITIONS PRECEDENT

85.     All conditions precedent to Plaintiff's claims have occurred, are excused, and/or

been performed.

## X. PRAYER

86.     For these reasons, Plaintiff respectfully requests the following relief:

a.      that Defendants be cited to appear and answer this lawsuit;

b.      a judgment in favor of Plaintiff on Counts 1, 2, 3, and 4 asserted herein;

c.      with respect to Counts 1 and 2 (federal trademark infringement and false

association against all Defendants):

i.      an award to Plaintiff of Defendants' profits and any actual damages

sustained by Plaintiff (or, alternatively, an award to Plaintiff of nominal damages)

according to law, *see* 15 U.S.C. § 1117(a);

ii.     the enhancement of any amounts of actual damages awarded to

Plaintiff according to law, *see id.*;

iii.    the delivery and destruction of all infringing materials according to

law, *see id.* at § 1118; and

iv.     an award to Plaintiff of its reasonable attorneys' fees and costs for

this action and any appeals thereof per applicable law, *see* 15 U.S.C. § 1117(a), *see*

FED. R. CIV. P. 54;

d.      with respect to Count 3 (breach of contract against the Primary Defendants):

i.      an award to Plaintiff of actual damages per applicable law;

ii.     an order of specific performance, a preliminary injunction, and/or a

permanent injunction restraining the Primary Defendants and their respective

owners, officers, agents, and employees, and all those in active concert or

participation with any of them, from further breaching the Settlement Agreement and requiring them to comply with the terms of the Settlement Agreement; and

      iii.    an award to Plaintiff of its legal expenses (including its reasonable attorneys' fees, costs, and disbursements) for this action and any appeals thereof per the Settlement Agreement and/or applicable law, *see* TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8), *see* FED. R. CIV. P. 54;

e.    with respect to Count 4 (tortious interference with an existing contract against the Secondary Defendants):

      i.    an award to Plaintiff of actual damages per applicable law;

      ii.    an award to Plaintiff of exemplary damages according to law;

      iii.    a preliminary injunction and/or a permanent injunction restraining the Secondary Defendants and their respective owners, officers, agents, and employees, and all those in active concert or participation with any of them, from further interfering with the Settlement Agreement; and

      iv.    an award to Plaintiff of its costs for this action and any appeals thereof per applicable law, *see* FED. R. CIV. P. 54;

f.    with respect to Counts 1, 2, 3, and 4 asserted herein:

      i.    a preliminary injunction and/or a permanent injunction restraining Defendants and their respective owners, officers, agents, and employees, and all those in active concert or participation with any of them, from further infringing the *UCHI* Mark and any variations thereof; and

      ii.    an award to Plaintiff of pre- and post-judgment interest at the highest amounts under law; and

g.      an award to Plaintiff of such other and further relief, special or general, in

law or equity or statute, as the Court may deem just and proper.

Dated: October 24, 2024

Respectfully submitted,

JACKSON WALKER L.L.P.

By:  */s/ Emilio B. Nicolas*
    Emilio B. Nicolas
    TSBN 24058022 & W.D. Tex. admitted
    enicolas@jw.com
    Katharine Lee Carmona
    TSBN 00787399 & W.D. Tex. admitted
    kcarmona@jw.com
    Melissa S. Ruiz
    TSBN 24128097 & W.D. Tex. admitted
    mruiz@jw.com
    100 Congress Avenue, Suite 1100
    Austin, Texas 78701
    (512) 236-2000 – Telephone
    (512) 236-2002 – Facsimile

ATTORNEYS FOR PLAINTIFF
UCHI RESTAURANTS GROUP, INC.