# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **UCHI RESTAURANTS GROUP, INC.,** | § | |
| *Plaintiff* | § | |
| | § | |
| | § | |
| **v.** | § | **No. 1:24-CV-01288-RP** |
| | § | |
| **JOHNNY HOANG, ET AL.,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Plaintiff Uchi Restaurants Group, Inc. ("URG") filed this suit in October 2024. Dkt. 1. Defendants Johnny Hoang and Bluebonnet Sushi LLC (collectively, "Defendants") did not—and still have not—appeared. URG moved for entry of default, which the clerk entered. Dkts. 21; 22; 23; 24. Pursuant to the District Judge's order, Dkt. 29, URG moved for default judgment. Dkt. 30. After reviewing the motion and the relevant case law and holding a hearing, the undersigned recommends that the District Judge grant URG's motion.

## I.    BACKGROUND

This is a trademark infringement case. URG owns and operates the "UCHI" brand of restaurants and is the exclusive owner of the registered "UCHI" trademark. Dkt. 30-4, at 3. In 2019, URG alleges it discovered that Hoang used the names "Uchi Sushi & Hibachi" and "Uchi Sushi" as monikers for his Japanese-inspired restaurants

1

in Metairie and Destrehan, Louisiana. Dkt. 1, at 2. URG and Hoang ultimately reached a settlement agreement, which required Hoang to cease using the infringing marks. *Id.* However, in 2024, URG discovered that Hoang had resumed use of the "UCHI" marks at the Metairie and Destrehan restaurants, as well as at a new location in Baton Rouge. *Id.* at 3; Dkt. 30-3. According to URG, Hoang "attempted to cover up" the breach of the settlement agreement and renewed infringement by operating the three restaurants under his company, Bluebonnet Sushi LLC. Dkt. 1, at 3. URG sent Hoang a cease-and-desist letter, which Hoang ignored. *Id.* at 4-5; Dkt. 30-1, at 3. Then, URG initiated this suit, alleging violations of the Lanham Act, breach of contract, and tortious interference with an existing contract. Dkt. 1, at 19-28; 15 U.S.C. § 1051, et seq.[1]

Defendants did not appear or otherwise respond to URG's complaint. Following the clerk's entry of default as to Hoang and Bluebonnet Sushi LLC, the District Judge ordered URG to move for default judgment. Dkt. 29. URG did so, asking this Court to find that Defendants infringed its trademark under the Lanham Act[2] and award URG treble actual damages, attorneys' fees, costs, and pre- and post-judgment interest. Dkt. 30, at 11-17. URG also requests a permanent injunction against Defendants' infringing activities. *Id.* at 17-19.

---

[1] URG's claims against the other named defendants in this action, including the Metairie and Destrehan restaurants and Hoang's co-owners of those restaurants, have been resolved. Dkts. 27; 28; 30, at 5 n.3. For the purposes of this motion, only Defendants' infringing activities in connection with the Baton Rouge restaurant remain at issue. *See* Dkt. 30, at 1, 8.

[2] URG does not seek default judgment as to the other claims in its complaint. Dkt. 30, at 3 n.1.

## II.    LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant that has failed to plead or otherwise defend itself. Fed. R. Civ. P. 55(a)-(b). That said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment simply because the defendant is in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, a default judgment is generally committed to the discretion of the district court. *Mason v. Lister,* 562 F.2d 343, 345 (5th Cir. 1977).

In considering URG's motion, the Court must determine: (1) whether default judgment is procedurally warranted; (2) whether URG's complaint sets forth facts sufficient to establish that it is entitled to relief; and (3) what form of relief, if any, URG should receive. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008); *see also J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (using the same framework).

## III.    DISCUSSION

### A.    Default judgment is procedurally warranted.

To determine whether entry of a default judgment is procedurally warranted, district courts in the Fifth Circuit consider six factors: "[1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a

good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

On balance, the *Lindsey* factors weigh in favor of entering a default judgment against Defendants. Because Defendants have not filed a responsive pleading, there are no material facts in dispute. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Defendants' failure to appear and respond has ground the adversary process to a halt, prejudicing URG's interest in pursuing its claim for relief. *See J & J Sports*, 126 F. Supp. 3d at 814 ("Defendants' failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests.") (internal citation and quotation marks omitted). The grounds for default are established: Defendants were properly served and have failed to appear and participate at all, much less timely file a responsive pleading. *See* Dkts. 6; 7; 8; 9; 10; 11. There is no indication that the default was caused by a good-faith mistake or excusable neglect. The undersigned therefore finds that default judgment is procedurally warranted.[3]

## B.    URG's complaint is sufficient to establish its right to relief.

Default judgment is proper only if the well-pleaded factual allegations in URG's complaint establish a valid cause of action. *Nishimatsu Constr. Co.*, 515 F.2d

---

[3] The Clerk of Court entered default. Fed. R. Civ. P. 55(a); Dkts. 21; 22; 23; 24. Plaintiff states that no Defendant is a minor or incompetent person. *See* Fed. R. Civ. P. 55(b)(2); Dkts. 30, at 5, 6; 30-2. Plaintiff has also established that no Defendant is "in military service." 50 U.S.C. § 3931; Dkts. 30, at 5, 6; 30-2.

at 1206. By defaulting, a defendant "admits the plaintiff's well-pleaded allegations of fact." *Id*. In determining whether factual allegations are sufficient to support a default judgment, the Fifth Circuit employs the same analysis used to determine sufficiency under Rule 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While "detailed factual allegations" are not required, the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

URG's sole cause of action in this motion for default judgment is trademark infringement under the Lanham Act. Dkt. 30, at 3 n.1; 15 U.S.C. § 1114(1)(a). To prevail on its claim, URG must prove "(1) [it] possess[es] a legally protectable trademark, and (2) [Defendants'] use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (citations omitted); *see also Springboards to Education, Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 811-12 (5th Cir. 2019) (applying the same test). "A 'likelihood of confusion' means that confusion is not just possible, but probable." *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012). In determining whether a likelihood of

5

confusion exists, courts in the Fifth Circuit consider the "digits of confusion": "(1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, ... (7) any evidence of actual confusion," and "(8) the degree of care exercised by potential purchasers." *Id.* The "digits" are not exhaustive, and no single factor is dispositive. *Id.* Additionally, the digits are flexible, serving as "guides, not an exact calculus." *Springboards*, 912 F.3d at 812 (internal quotation marks omitted).

URG has demonstrated the elements of its trademark infringement claim. URG pleads that it owns a valid and legally protectable United States Trademark, the "UCHI" mark, Registration No. 3,722,422. Dkt. 1, at 11. URG also asserts that it used the mark extensively and continuously before Defendants began their alleged infringing activities and has expended substantial resources promoting the mark. *Id.* Additionally, URG contends that the mark is valuable, incontestable, and used to identify both its corresponding services and URG as their source. *Id.*

URG also pleads that there is a likelihood of confusion. First, the "type of trademark" digit of confusion "refers to the strength of the mark." *Streamline*, 851 F.3d at 453. "The more distinctive the mark, the more likely that consumers will be confused by competing uses of the mark." *Id.* In this case, URG pleads that the "UCHI" mark is "inherently distinctive, federally registered, and incontestable." Dkt. 1, at 2. URG has also used the "UCHI" mark to operate its "nationally recognized" and "award-winning" restaurants for over 20 years, which suggests the mark is

distinctive. *Id.* at 1; *see also Streamline*, 851 F.3d at 453. The undersigned agrees with URG that this digit weighs in favor of a likelihood of confusion.

Second, to analyze the similarity of the marks, courts compare the marks' appearance, sound, and meaning. *Streamline*, 851 F.3d at 454. "The more similar the marks, the greater the likelihood of confusion." *Id.* Where two marks are distinguishable, courts ask "whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association." *Id.* (internal quotation marks omitted). Here, Defendants have used the word "UCHI" as the dominant feature of their restaurant name. Dkt. 1, at 2; *see Rex Real Est. I, LP v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 622 (5th Cir. 2023) (noting that in evaluating mark similarity, "courts should give more attention to the dominant features of a mark" (internal quotation marks omitted)). As in *Streamline*, the undersigned finds that the two marks are essentially identical and, in any event, similar enough that a reasonable person would discern a common origin or association based on the marks. *See Streamline*, 851 F.3d at 454. This digit favors likelihood of confusion.

Third, similarity of the products and services likewise weighs in favor of the likelihood of confusion. "The greater the similarity between the products and services, the greater the likelihood of confusion." *Id.* Here, URG and Defendants both operate brick-and-mortar restaurants serving sushi and other Asian-inspired food. Dkt. 1, at 1, 34. Additionally, given the close proximity of the infringing establishment and URG's Texas locations, as well as the fact that URG is a nationally recognized brand,

Defendants' market is arguably one into which URG would naturally expand. Dkt. 1, at 1. Therefore, the danger of affiliation or sponsorship is greater. *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 666 (5th Cir. 2000) (finding that the magistrate judge did not clearly err by concluding that the similarity digit weighed in the mark owner's favor because the infringing use was within the owner's "'natural zone of expansion'"). The undersigned finds that there is significant similarity between the products and services and therefore that this factor weighs in favor of likelihood of confusion.

Fourth, the identity of the retail outlets and purchasers weighs in favor of the likelihood of confusion. "The smaller the overlap between the retail outlets for and the predominant consumers of [the parties'] goods, the smaller the possibility of confusion." *Streamline*, 851 F.3d at 455. There is considerable overlap here. As URG points out, "URG and Defendants target the same type of purchasers, namely, patrons in the market for sushi or other Asian-inspired cuisine in a sit-down … restaurant setting." Dkt. 30, at 10; *see* Dkt. 1, at 1, 34. And given that URG's mark is nationally recognized, it is possible that a customer in Louisiana would confuse Defendants' restaurant for one of URG's. *See* Dkt. 1, at 1; *Rex*, 80 F.4th at 622 (analyzing, in the context of the identity-of-purchasers digit, whether the infringing party's services were in a market into which the mark owner would naturally expand).

Fifth, in weighing advertising-media identity, greater similarity in advertising campaigns creates a greater likelihood of confusion. *Streamline*, 851 F.3d at 455.

URG demonstrates that both URG and Defendants utilize exterior signage, menus, websites, and social media to promote their restaurants. Dkts. 1, at 34; 30-1, at 3-4; 30-3, at 2-6; 30-4, at 3. Because the parties' advertising-media identities are substantially similar, the undersigned finds that this digit weighs in favor of likelihood of confusion.

Sixth, the defendants' intent weighs in favor of likelihood of confusion. "'Although not necessary to a finding of likelihood of confusion, a defendant's intent to confuse may alone be sufficient to justify an inference that there is a likelihood of confusion.'" *Streamline*, 851 F.3d at 455 (quoting *Bd. of Supervisors v. Smack Apparel Co.*, 550 F.3d 465, 481 (5th Cir. 2008)). The intent inquiry "focuses on whether the defendant intended to derive benefits from the reputation of the plaintiff." *Id.* URG argues that Hoang (with Bluebonnet Sushi LLC) "clearly intends to emulate and capitalize on URG's brand and reputation by offering lower-quality food and services at his competing restaurant" while disregarding the settlement agreement. Dkt. 30, at 10. URG points out that Defendants have "shrugg[ed] off URG's repeated notices and demands." *Id.* URG produced facts demonstrating Defendants acted in defiance of the parties' settlement agreement and continued to use the "UCHI" mark after receiving a cease-and-desist letter. Dkts. 1, at 4-5; 30-1, at 3.

In general, a defendant's continued use of a mark after it receives a cease-and-desist letter cannot be construed as evidence of intent to confuse. *Streamline*, 851 F.3d at 456. Additionally, intent to confuse cannot be inferred from a defendant's failure to stop use of the mark where the plaintiff "offer[s] no evidence that, after

learning about [plaintiff], [defendant] did anything differently in an attempt to 'pass off' [their] products [and services] as [plaintiff]'s." *Id.* However, in this case, Defendants' continued use of the mark in violation of the settlement agreement evidences subsequent use of the mark with intent to trade on URG's reputation—even if Defendants' initial use was innocent. *See Westchester*, 214 F.3d at 666 ("An innocent intent in adopting a mark does not immunize an intent to confuse in the actual use of the mark."). Indeed, in *Streamline*, the court held that intent to confuse could not be inferred from the infringing user's failure to change its name *prior* to the mark owner's filing of a lawsuit—here, Defendants used the mark after URG filed its suit and in violation of the settlement agreement. *Streamline*, 851 F.3d at 456. This factor weighs in favor of likelihood of confusion.

Seventh, actual confusion. URG admits that because it has been deprived of discovery in this case, it is unable to put forward evidence of actual confusion. Dkt. 30, at 10. This digit is neutral.

Eighth and finally, courts in the Fifth Circuit determine the degree of care exercised by potential purchasers by "looking to both the kind of goods or services offered and the kind of purchasers." *Rex*, 80 F.4th at 627. The inquiry is "dependent in part on the price of the item." *Streamline*, 851 F.3d at 458. "'Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion.'" *Id.* (quoting *Smack*, 550 F.3d at 483). URG argues that because the parties "offer restaurant services with the same or similar cuisine offerings" under the name "UCHI," consumers are "less likely to inspect the source of

the Baton Rouge restaurant"—essentially repeating its arguments as to the third and fourth digits. Dkt. 30, at 10-11. URG produces no facts with respect to price, making no argument that the price of its food and services makes buyers take less care in selecting where to eat. *See id.* It also offers no facts illustrating the characteristics of its customers. *Id.* This factor is neutral.

As each of the digits weighs in favor of or is neutral with respect to the likelihood of confusion, the undersigned finds that URG's factual allegations and the record before the Court are enough to raise URG's right to relief above a speculative level as to its claim that Defendants violated § 1114 of the Lanham Act. The undersigned finds that default judgment as to URG's trademark-infringement claims is substantively warranted.

## C.    URG is entitled to all the relief it seeks.

Federal Rule of Civil Procedure 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In other words, the relief prayed for in a complaint defines the scope of relief available on default judgment. *Id.*

A defendant's default concedes the truth of the allegations of the complaint concerning the defendant's liability, but not damages. *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Ordinarily, damages will not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

The undersigned conducted a hearing on the issue of damages in this case and finds that URG is entitled to all the relief it seeks. Dkt. 34.

        1.    *URG should receive treble actual damages.*

Recovery for trademark infringement under the Lanham Act may include defendant's profits, any damages sustained by the plaintiff, and costs of the action. 15 U.S.C. § 1117(a); *Bos. Pro. Hockey Ass'n v. Dall. Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 74 (5th Cir. 1979). Additionally, under the statute, courts "may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a).

URG argues it is entitled to $54,765.00 in actual damages, or 6% of the one-year average gross sales for the comparable Metairie and Destrehan restaurants over the last 3 years. Dkt. 30, at 13. While URG acknowledges that it has never licensed use of its mark to a third party, it points out that 6% is "on the low-end" of potential royalty rates, and that in reality, URG would charge a third-party a much higher rate—plus an upfront franchise fee—to use the "UCHI" mark. *Id.* at 12-13. Courts in the Fifth Circuit have permitted awards based on a reasonable royalty rate so long as those awards are "rationally related" to the scope of the infringement. *Streamline*, 851 F.3d at 461 (quoting *Bos. Pro. Hockey*, 597 F.2d at 75-76).[4] In *Streamline*, the

---

[4] The Fifth Circuit declined in *Streamline* to address whether a royalty-based award can be based on a hypothetical negotiation between the parties. *Streamline*, 851 F.3d at 461. In earlier cases, the Fifth Circuit countenanced the approach. *See Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 371 (5th Cir. 2004) ("The amount that a party hypothetically would have agreed to pay as a reasonable royalty for use of the mark is sometimes used as a

court found that the royalty award did not bear a rational relationship to the infringing use, given "a lack of evidence on the extent to which [the infringing party] benefitted from the infringement" and the likelihood that the infringing use was not as extensive as the rights that a license would have bestowed. *Id.*

Because this case is in the default-judgment posture, Defendants have deprived URG of the opportunity to gather any evidence regarding any of the data points from *Streamline*. *Id.* As to the 6% royalty rate figure, URG presented unrebutted evidence at the hearing and in its supplemental briefing suggesting URG's relationship to Defendants is analogous to a franchise, where the franchisee "pay[s] for the use of a franchisor's mark, with its attendant good will, in its business." Dkts. 32-1, at 9; 34. URG also demonstrates that franchisors "[m]ost often" establish their royalty rate based on a fixed percentage of the franchisee's gross sales. Dkt. 32-1, at 16; 34. The Chief Financial Officer of URG's parent company testified that, in a hypothetical, arms-length transaction, URG would require a minimum of 6% royalty rate and a significant upfront franchise fee to license its mark. Dkt. 30-4. Based on this evidence, the undersigned finds that the 6% figure is reasonable and appropriate to calculate URG's damages here.

---

measure of damages in trademark actions, especially those involving licensing relationships."); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1126 (5th Cir. 1991) (affirming damages award based on hypothetical initial franchise fee of $10,000 per store and continuing royalty of 1% in Lanham Act case); *see also Choice Hotels Int'l, Inc. v. Goldmark Hosp., LLC*, No. 3:12-cv-0548-D, 2014 WL 642731, at *14 (N.D. Tex. Feb. 19, 2014) (noting that the Fifth Circuit has approved of the reasonable-royalty method to calculate damages in trademark cases). In the absence of other guidance, the undersigned employs the reasonable-royalty approach here.

As to use of the Metairie and Destrehan restaurants as comparators, URG shows that the Metairie and Destrehan restaurants are each within 75 miles of the Baton Rouge restaurant and that all three restaurants are similar in quality, customer base, and price. Dkts. 30, at 13 n.1; 34. Given that Defendants deprived URG of the opportunity to gather any evidence as to Defendants' own profits, calculating URG's damages in this case based on the one-year average gross sales for the Metairie and Destrehan restaurants over the last 3 years is appropriate. *See* Dkt. 30, at 13. Accordingly, URG should be awarded $54,765.00 in actual damages, which reflects 6% of the average one-year gross sales based on data from the Metairie and Destrehan restaurants. *Id.*

URG also asks that this Court award it treble damages on the grounds that Defendants' infringing conduct is "unmistakably willful and in bad faith." Dkt. 30, at 14. Under the Lanham Act, courts "may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). "An enhancement of damages may be based on a finding of willful infringement, but cannot be punitive." *Taco Cabana*, 932 F.2d at 1127 (citing 15 U.S.C. § 1117(a)). There is substantial evidence that Defendants' infringement is willful here: Defendants defied the terms of the settlement agreement, ignored URG's cease-and-desist letters, ignored this suit, and continue to infringe URG's marks. Dkts. 1, at 3; 30-1, at 3; 32-1, at 30-37, 51-64; *Taco Cabana*, 932 F.2d at 1127 (finding that the district judge did not abuse his discretion in awarding enhanced damages where there was "substantial evidence

of willful infringement"). The undersigned agrees with URG that Defendants' conduct is "unmistakably willful" and accordingly recommends that the District Judge award URG treble damages for a total of $164,295.

### 2.    *URG is entitled to its requested attorneys' fees and costs.*

URG also seeks to recover its reasonable and necessary attorneys' fees and costs pursuant to section 1117(a) of the Lanham Act. Dkt. 8, at 21. Courts have discretion to award attorneys' fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). The Lanham Act permits an award of attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). In the Fifth Circuit, "an exceptional case is one where (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). Courts in this Circuit have found cases exceptional where the defendant entirely disregards the proceeding, leading to a default judgment. *See, e.g.*, *Real Est. Edge, LLC v. Campbell*, No. 1:17-CV-1093-RP, 2019 WL 830966, at *6 (W.D. Tex. Feb. 21, 2019); *Chevron Intell. Prop., LLC v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *4 (N.D. Tex. Aug. 24, 2009). The Fifth Circuit has also stated that examples of "exceptional cases" include those "in which the defendant did not defend the lawsuit and instead continued to infringe the plaintiff's trademark." *Ballero v. 727 Inc.*, 744 F. App'x 871, 873 (5th Cir. 2018).

The undersigned finds that this is an exceptional case because Defendants entirely disregarded this action and continue to willfully infringe URG's mark. As the prevailing party under the Lanham Act, URG is entitled to reasonable attorneys' fees, costs, and expenses incurred in bringing this lawsuit pursuant to 15 U.S.C. § 1117(a).

The undersigned recommends that the District Judge award URG its requested fees and costs in full. URG requests that this Court award it $28,921.95 in attorneys' fees and $1,657.02 in costs.[5] Dkt. 30, at 16. URG supports its request with an affidavit from its counsel attesting to the reasonableness of the fees requested and a statement describing the hours its attorneys and paralegal billed while litigating this dispute and related costs. *Id.* at 9, 36-54. Averring that the rates his firm charged were reasonable for the services provided, counsel for URG calculates the total lodestar[6] amount claimed based on each attorney or paralegal's typical rate, minus a 10% client discount on two of the four bills. *Id.* at 8, 36, 44. The undersigned is satisfied that the claimed amount is reasonable and recommends granting URG these fees and costs in full. *See Mighty Mug, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 1:22-cv-100-RP, 2023 WL 4850953, at *7 (W.D.

---

[5] URG initially asked this Court to award it $2,570.45 in costs. Dkt. 30, at 16. However, at the hearing, counsel for URG asked this Court to strike its request for private investigator costs. Dkt. 30-1, at 39; 34. Accordingly, the undersigned subtracts $913.43 from URG's original costs request.

[6] The Supreme Court has held that the lodestar is "the most useful starting point for determining the amount of a reasonable fee[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Modifications to the lodestar figure are permissible only in "rare and exceptional cases." *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (internal quotations omitted). The undersigned finds no exceptional circumstances warranting a departure from the lodestar figure here.

Tex. June 23, 2023), *report and recommendation adopted*, 2023 WL 4853613 (W.D.

Tex. July 28, 2023) (awarding plaintiff's requested fee amount in a default judgment

involving the Lanham Act).

3.    *URG should receive pre- and post-judgment interest.*

The Lanham Act does not explicitly state that a plaintiff can recover

prejudgment interest under 15 U.S.C. § 1117(a). And while courts in this Circuit

generally agree that district courts *can* award prejudgment interest in trademark

cases, they disagree as to whether it should be awarded presumptively or only in

exceptional cases. *ClearChoice Holdings, LLC v. Clear Choice Dental, PLLC*, No. H-

14-03569, 2016 WL 8136622, at *9 (S.D. Tex. Dec. 23, 2016), *report and

recommendation adopted*, 2017 WL 416962 (S.D. Tex. Jan. 30, 2017) (citing *Clearline

Tech. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 712 (S.D. Tex. 2013)). As

counsel for URG acknowledged at the hearing, the Fifth Circuit has not decided this

issue. *See* Dkt. 34. But district courts in this Circuit generally award prejudgment

interest based on the rationale that without it, the plaintiff's compensation is

incomplete and the defendant has an incentive to delay. *Id.* (internal quotation marks

omitted); *see also Clearline*, 948 F. Supp. 2d at 712. Courts have also found that

prejudgment interest is "especially appropriate" in cases where the defendant has

"delayed the suit, to the Plaintiff's detriment, by failing to file an answer[.]" *Exxon

Mobil Corp. v. Exxonmobil for Export, Import & Trade Ltd.*, No. 3:12-cv-1122-P, 2013

WL 12124589, at *5 (N.D. Tex. Aug. 23, 2013).

The undersigned follows the lead of other district courts in this Circuit and recommends that URG receive prejudgment interest on the damages award at a rate of 8.50% per annum, which was the prime rate on the date when URG sent its initial cease-and-desist letter. Dkt. 30-1, at 3 (stating that URG sent its cease-and-desist letter on August 23, 2024); Dkt. 32-1, at 66-67 (prime rate chart); *see Galvotec Alloys, Inc. v. GaUS Anodes Int'l LLC*, No. 7:13-cv-664, 2018 WL 11354585, at \*4 (S.D. Tex. Mar. 27, 2018) (awarding pre-judgment interest from the date of plaintiff's initial cease-and-desist letter until the date of judgment); *ClearChoice*, 2016 WL 8136622, at \*10 (awarding prejudgment interest at the prime rate). Additionally, the undersigned finds that URG is entitled to post-judgment interest calculated pursuant to 28 U.S.C. § 1961.

4.    *URG is entitled to permanent injunctive relief.*

URG also seeks a permanent injunction as detailed in its proposed order. Dkt. 30-6. The Lanham Act provides that courts "have the power to grant injunctions … to prevent the violation of any right of the registrant of a mark[.]" 15 U.S.C. § 1116(a). It also permits courts to "order that all labels, signs, prints, … and advertisements in the possession of the defendant" that bear the registered mark in violation of the Lanham Act be delivered up or destroyed. *Id.* § 1118. URG seeks relief under both provisions, asking generally that this Court order Defendants to stop infringing its marks, take down infringing webpages, and deliver up to URG signage and other items showing the infringed mark. *See* Dkt. 30-6.

"The party seeking a permanent injunction must ... establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 533 (5th Cir. 2016) (internal quotation marks omitted). All four factors weigh in favor of granting a permanent injunction against Defendants.

URG has succeeded on the merits of its Lanham Act claims. Defendants' continued use of the "UCHI" mark would result in an ongoing and irreparable injury to URG's reputation. *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) (finding irreparable harm based upon potential damage to reputation). This injury outweighs any harm Defendants will incur from ceasing use of the "UCHI" mark because Defendants used the mark unlawfully after receiving notice of URG's rights to the mark. *See* Dkt. 1, at 6. The public interest factor also weighs in favor of an injunction because the public interest and the Lanham Act would be undermined if Defendants' improper conduct is allowed to continue. *Alamo Area Mut. Hous. Ass'n, Inc. v. Lazenby*, No. 5:17-cv-634-DAE, 2017 WL 7052253, at *10 (W.D. Tex. July 28, 2017) ("[T]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." (internal quotation marks omitted)). Accordingly, a permanent injunction is warranted.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT** URG's motion for default judgment against Defendants, Dkt. 30. URG should be awarded actual damages in the amount of $164,295, attorneys' fees in the amount of $28,921.95, and costs in the amount of $1,657.02. URG should also be awarded prejudgment and post-judgment interest at a rate of 8.50% per annum from August 23, 2024, to the date of entry of this default judgment.

The undersigned further **RECOMMENDS** that the District Judge **GRANT** URG's request for permanent injunctive relief, Dkt. 30. Specifically, the undersigned recommends that the District Judge permanently enjoin and restrain Defendants under 15 U.S.C. § 1116(a) from:

a) Further breaching, or inducing any further breach of, any provision of that certain written agreement between URG, Hoang, and Lakeside Tokyo LLC titled "Confidential Settlement Agreement" and dated March 6, 2020;

b) Using, registering, attempting to register, or assisting any other person or entity in using, registering, or attempting to register, anywhere, any names or marks which incorporate the word "UCHI" or any variations or foreign equivalents thereof (1) as trademarks or to otherwise identify or distinguish Hoang's, Bluebonnet's, or any third party's respective goods, services, businesses, or vocations in the food, beverage, and/or hospitality industries (including, for example, restaurants, bars, food products, and beverages), or (2)

as all or part of the name of the "Uchi Sushi & Hibachi" restaurant located at or about 1521 N. Causeway Blvd., Metairie, Louisiana 70001 ("Metairie Restaurant"), the "Uchi Sushi Hibachi & Vietnamese Noodles" restaurant located at or about 3001 Ormond Blvd., Destrehan, Louisiana 70047 ("Destrehan Restaurant"), the "Uchi Sushi" (a/k/a "Uchi Sushi & Hibachi") restaurant located at or about 5454 Bluebonnet Blvd., Suite P, Baton Rouge, Louisiana 70809 ("Baton Rouge Restaurant"), and/or any other restaurant or bar that Hoang and/or Bluebonnet owns, controls, manages, or operates, in whole or in part; and

c)  Engaging in any activities, or publishing any statements, representations, or depictions, that suggest Hoang, Bluebonnet, or any of their respective goods, services, businesses, or vocations are affiliated with, connected with, associated with, originate from, sponsored by, or approved by URG, any of URG's affiliated companies, any of URG's licensees or successors-in-interest, or the UCHI Mark.

The District Judge should also permanently enjoin and require Defendants to immediately do the following at their own expense under 15 U.S.C. §§ 1116(a) and 1118:

a)  Permanently disable, remove, or otherwise take down all websites and social media pages that are used, or have been used, to promote the Metairie Restaurant, the Destrehan Restaurant, the Baton Rouge Restaurant, and/or any other restaurant(s) that Hoang and/or Bluebonnet owns, controls,

manages, or operates, in whole or in part, including: (i) the website located at https://uchisushiandhibachi.com; (ii) the LinkTree page located at https://linktr.ee/UchiSushiBR; (iii) the TikTok page located at https://www.tiktok.com/@uchisushibr; (iv) the Facebook page located at https://www.facebook.com/p/Uchi-Sushi-Baton-Rouge-61562856189238/; and iii. the Instagram page located at https://www.instagram.com/UchiSushi.BR/;

b) Transfer to URG all domain names in the possession, custody, or control of Hoang, Bluebonnet, their respective officers, agents, servants, and employees, and/or those in active concert or participation with any of them that include the word "UCHI" or any variations or foreign equivalents thereof (including the domain name UchiSushiAndHibachi.com), and, in connection therewith, to contact, coordinate, and cooperate with URG (c/o URG's attorneys of record or such other persons as URG may direct in writing) to accomplish those domain name transfers;

c) If Hoang, Bluebonnet, their respective officers, agents, servants, and employees, or those in active concert or participation with any of them do not comply with the above-described domain name transfer requirement, then their domain name registrar(s) shall coordinate and cooperate with URG (c/o URG's attorneys of record or such other persons as URG may direct in writing) to accomplish those domain name transfers at Hoang's and Bluebonnet's expense;

d) Deliver up to URG or destroy all signs (interior and exterior), menus, advertisements and other marketing materials, labels, packaging, and wrappers, as well as all plates, molds, matrices, and other means of making the same, that include the word "UCHI" or any variations or foreign equivalents thereof which are in the possession, custody, or control of Hoang, Bluebonnet, their respective officers, agents, servants, and employees, and/or those in active concert or participation with any of them; and

e) Deliver up to URG, destroy, or reprogram all credit card terminals and other electronic devices in the possession, custody, or control of Hoang, Bluebonnet, their respective officers, agents, servants, and employees, and/or those in active concert or participation with any of them that are programmed to print the word "UCHI" or any variations or foreign equivalents thereof on any customer receipts, invoices, letterhead, stationary, business cards, displays, and other outputs.

The referral of this case should now be canceled.

## V.    WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is

served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED June 13, 2025.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE